ANGELA JOHNSON MESZAROS, CA Bar No. 174130
OSCAR ESPINO-PADRON, CA Bar No. 290603
BYRON CHAN, CA Bar No. 306043
EARTHJUSTICE
ameszaros@earthjustice.org
oespino-padron@earthjustice.org
bchan@earthjustice.org
707 Wilshire Boulevard, Ste. 4300
Los Angeles, CA 90017
Tel: (213) 766-1070
F: (213) 403-4822

*Counsel for Plaintiff East Yard
Communities for Environmental Justice*

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| EAST YARD COMMUNITIES FOR ENVIRONMENTAL JUSTICE,<br><br>Plaintiff,<br><br>v.<br><br>PHILLIPS 66 COMPANY d.b.a. LA REFINERY WILMINGTON PL and LOS ANGELES REFINERY,<br><br>Defendant. | Civ. No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**(Clean Air Act § 304(a), 42 U.S.C. § 7604(a))** |

## INTRODUCTION

1. Plaintiff East Yard Communities for Environmental Justice ("East Yard" or "Plaintiff") brings this action to enforce South Coast Air Quality Management District Rules 1173 and 1176. These rules provide control measures designed to prevent volatile organic compounds ("VOC") releases from components in process and wastewater systems at refineries. Because this action arises under and concerns violations of the federal Clean Air Act, this Court has jurisdiction under 28 U.S.C. § 1331.

2. In Southern California, more people die every year from air pollution than from traffic accidents and crime-related deaths combined. Lung-searing ozone is a major contributor to these premature deaths in the region and chronic health conditions such as asthma.

3. Ozone forms through a chemical reaction between VOC and nitrogen oxides in the presence of sunlight. Several VOCs are also cancer-inducing hazardous air pollutants. In the Los Angeles area, petroleum refineries are a significant source of VOC releases.

4. Component leaks are the single largest source of VOC releases at refineries.

5. Defendant Phillips 66 Company ("Phillips 66" or "Defendant") has failed to comply with the requirements of Rules 1173 and 1176. Defendant has failed to conduct regular inspections and repairs of leaking components, perform follow-up inspections, and identify all components requiring inspections, among other non-compliance.

6. Defendant's non-compliance has resulted in significant VOC releases that cause ozone formation in the region, and expose residents in the region to hazardous VOCs. This air pollution has caused, or threatens to cause, negative health effects for East Yard's members.

7. Through this action, East Yard seeks injunctive and declaratory relief, including an assessment of civil penalties, against Defendant for violations of Rules 1173 and 1176. Without an order from this Court, Defendant's violations of these VOC control measures will continue.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction under 42 U.S.C. § 7604(a) to enforce "an emission standard or limitation, . . . and to apply any appropriate civil penalties" against Defendant for the violations alleged in this Complaint. This Court also has subject matter jurisdiction under 28 U.S.C. § 1331 as a civil action arising under the laws of the United States.

9. Venue is proper in this Court under 42 U.S.C. § 7604(c)(1) because Defendant operates two petroleum refineries located in Los Angeles County, California. In addition, venue is proper under 28 U.S.C. § 1391(b)(2) because the violations alleged in the Complaint occurred in this judicial district.

## NOTICE OF INTENT TO SUE

10. Under the Clean Air Act, 42 U.S.C. § 7401, *et seq.*, East Yard is required to provide notice 60 days prior to commencing this action. 42 U.S.C. § 7604(b)(1)(A). East Yard provided notice via certified mail of the violations alleged in this Complaint to Defendant on April 29, 2020, as required under 42 U.S.C. § 7604(b)(1)(A). *See* Exhibits 1–2 (Notice of Intent to Sue and Delivery Confirmations).

11. More than 60 days have elapsed since East Yard provided notice concerning the violations alleged in this Complaint. Defendant has failed and will continue to fail to comply with the regulatory obligations detailed in the notice.

## PARTIES

12. Plaintiff EAST YARD is an environmental health and justice non-profit membership organization based in Long Beach, California. East Yard's mission is to create a safe and healthy environment for communities

disproportionately suffering the negative impacts of industrial pollution in the region.

13. East Yard members reside, work, learn, and recreate in the Carson, Wilmington, and West Long Beach communities near the Defendant's petroleum refineries, as well as in East Los Angeles. Defendant's repeated and ongoing violations of regulations to control releases of VOCs from refinery components adversely affect East Yard members and their families.

14. Defendant's non-compliance results in actual and threatened harm to the health, educational, and economic interests of East Yard members, as well as the recreational enjoyment of their communities.

15. Interests of East Yard members directly harmed by Defendant's non-compliance include, but are not limited to: (1) breathing clean air without pollution and the negative health effects, and threatened health effects, caused by Defendant's excessive VOC releases; (2) using and enjoying property unimpaired by pollution caused by Defendant's excessive VOC releases; (3) enjoying recreational activities outside, including neighborhood running and biking, unaffected by pollution caused by Defendant's excessive VOC releases; (4) knowing the full extent of VOC releases from component leaks, including harmful levels of VOCs; and (5) enjoying the right to adherence by refineries to Clean Air Act requirements where members live, work, learn, and recreate. *See* Exhibits 3–7 (Declarations of East Yard Members).

16. Defendant PHILLIPS 66 is a petroleum refining and petrochemical company headquartered in Houston, Texas. Phillips 66 owns and operates twelve petroleum refineries in the United States, including two petroleum refineries in Wilmington and Carson, California.

## STATUTORY AND REGULATORY FRAMEWORK

### A. Clean Air Act

17. The Clean Air Act's purpose is to "protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1). The Clean Air Act is based on "cooperative" federalism involving "Federal, State, regional, and local programs to prevent and control air pollution." 42 U.S.C. § 7401(a)(4).

18. Accordingly, the Clean Air Act requires the U.S. Environmental Protection Agency ("EPA") to promulgate primary and secondary national ambient air quality standards ("NAAQS"). 42 U.S.C. § 7409(a). Primary NAAQS are set at a level "requisite to protect the public health." 42 U.S.C. § 7409(b)(1). Secondary NAAQS are set at a level "requisite to protect the public welfare from any known or anticipated adverse effects associated with the presence of such air pollutant in the ambient air." 42 U.S.C. § 7409(b)(2).

19. EPA has promulgated NAAQS for six criteria pollutants: carbon monoxide, lead, nitrogen dioxide, ozone, particulate matter, and sulfur dioxide. 40 C.F.R. § 50.4, *et seq.* EPA reviews these NAAQS in "five-year intervals" for revisions. 42 U.S.C. § 7409(d)(1).

20. Under the Clean Air Act, EPA designates areas that do not meet NAAQS as "nonattainment" areas. 42 U.S.C. § 7407(d)(1)(A)(i). In contrast, areas that meet NAAQS are "attainment" areas. 42 U.S.C. § 7407(d)(1)(A)(ii).

### B. State Implementation Plans

21. States are primarily responsible for achieving and maintaining NAAQS. 42 U.S.C. § 7407(a). Accordingly, the Clean Air Act requires states to submit a state implementation plan ("SIP") for EPA review and approval that "provides for implementation, maintenance, and enforcement" of NAAQS. 42 U.S.C. § 7410(a)(1); 42 U.S.C. § 7407(a). Each SIP must include "enforceable

1  emission limitations and other control measures, means, or techniques" to meet
2  NAAQS. 42 U.S.C. § 7410(a)(2)(A).

3  22. EPA has authority to enforce SIP requirements against any person
4  through an "order requiring such person to comply," "administrative penalty
5  order," or "civil action." 42 U.S.C. § 7413(a)(1). Further, the Clean Air Act
6  establishes that "any person may commence a civil action" against a source in
7  violation or that violated "an emission standard or limitation." 42 U.S.C. §
8  7604(a)(1). An "emission standard or limitation" includes any "standard,
9  limitation, or schedule" under a SIP approved by EPA and "any permit term or
10 condition." 42 U.S.C. § 7604(f).

    **C.   South Coast Air Quality Management District**

23. South Coast Air Quality Management District ("Air District") is a regional agency responsible for implementing and enforcing the Clean Air Act in California's South Coast Air Basin ("Basin"). Cal. Health & Safety Code §§ 40402(h), 40460, 42400.4.

24. The Basin includes portions of Los Angeles, Orange, Riverside, and San Bernardino counties. Cal. Health & Safety Code § 40410. The Air District is responsible for controlling emissions from stationary sources of air pollution. Cal. Health & Safety Code § 40000.

25. In that capacity, the Air District administers the Title V permit program under the Clean Air Act for "major sources" of air pollution. Cal. Health & Safety Code § 42301.11; 42 U.S.C. § 7661.

26. The Air District also prepares the SIP for the Basin to achieve and maintain federal NAAQS. Cal. Health & Safety Code § 40460(a). The SIP includes rules promulgated by the Air District that establish control measures for various pollutants. Cal. Health & Safety Code § 40460.

27. EPA reviews and approves Air District rules included in the SIP. Cal. Health & Safety Code § 40460(d). Moreover, Title V permits incorporate these

SIP-approved rules, including any "emission limits, standards, and other requirements that ensure compliance with all federal Clean Air Act" mandates. Cal. Health & Safety Code § 42301.10.

## GENERAL ALLEGATIONS

### A. South Coast Air Basin Pollution

28. The Basin remains in "extreme" nonattainment of various federal NAAQS, including ozone. Ozone forms through a chemical reaction between VOCs and nitrogen oxides in the presence of sunlight.

29. Ozone compromises lung function in children and causes negative health effects, such as asthma. Several VOCs are also cancer inducing and hazardous air pollutants under the Clean Air Act, including benzene. 42 U.S.C. § 7412.

30. Benzene is a sweet-smelling chemical that is carcinogenic to humans. Chronic lifetime exposure to benzene concentrations as low as 0.13 to 0.45 micrograms per cubic meter have been linked to an increased cancer risk.

31. Petroleum refineries contribute about 32 percent of total VOCs in the Wilmington, Carson, and West Long Beach areas. According to EPA, component leaks are the single largest source of VOCs at refineries.

32. The Basin hosts the largest concentration of refineries in California, including the largest refinery on the West Coast. These refineries are largely concentrated in the Wilmington, Carson, and West Long Beach areas.

### B. Phillips 66 Wilmington and Carson Refineries

33. Phillips 66 owns and operates two interconnected refineries in Wilmington and Carson, California, which process 139,000 barrels per day of crude oil.

34. The Phillips 66 Carson refinery receives and processes crude oil into intermediate products sent via pipeline to the Phillips 66 Wilmington refinery.

These intermediate products undergo further conversion to produce various fuels, including gasoline, jet fuel, and diesel.

35. The Phillips 66 Wilmington and Carson refineries are significant sources of VOC emissions, according to annual emissions inventories reported to the Air District. In 2018, the Phillips 66 Wilmington refinery reported 205 tons of VOC emissions, including 508 pounds of benzene. Phillips 66 Carson reported 86 tons of VOC emissions, including 649 pounds of benzene.

36. These annual emissions inventories underreport actual VOC releases from refineries, according to an Air District study published in 2017. The study determined the Phillips 66 Wilmington and Carson refineries are among the worst offenders in the Basin for underreporting VOC emissions.

37. The study confirmed serious discrepancies between reported emissions inventories and onsite refinery emissions. For VOC emissions generally, the study found that refineries surveyed released 6.2 times more VOCs than reported in annual emissions inventories. For benzene emissions in particular, however, the study found that refineries surveyed released 34 times more benzene than reported in annual emissions inventories.

38. Among the specific refineries surveyed, the study determined the Phillips 66 Carson refinery emitted 8.3 times more VOCs and 33 times more benzene, and the Phillips 66 Wilmington refinery released 12 times more VOCs and 202 times more benzene than reported in annual emissions inventories. According to the study, the Phillips 66 Wilmington refinery has the largest uncontrolled and unreported VOC emissions of all refineries in the Basin.

### C. Volatile Organic Compound Control Measures

39. In an effort to control VOC emissions from petroleum refineries in the Basin, the Air District adopted Rules 1173 and 1176. These rules establish requirements for leak detection and repair ("LDAR") programs at refineries.

40. Rule 1173 controls VOC releases from refinery process components, including valves, fittings, pumps, compressors, pressure relief devices, diaphragms, hatches, sight-glasses, and meters. Rule 1173(a), (c)(4).

41. Rule 1176 controls VOC releases from "wastewater systems," including "process drains, sewer lines, junction boxes, manholes, sumps, or wastewater separators" and "associated components." Rule 1176(a), (c)(24).

42. EPA approved these rules as part of California's SIP and they also are incorporated into Title V operating permits. 40 C.F.R. § 52.220. Consequently, these rules are federally enforceable under the Clean Air Act. 42 U.S.C. § 7604(f)(4); 42 U.S.C. § 7413(b); 40 C.F.R. § 52.23.

43. Under both Rules 1173 and 1176, refineries are required to (1) inspect components using an analyzer to measure VOC emissions; (2) repair components leaking VOCs above the applicable regulatory emissions threshold; (3) take leak measurements to confirm the repair controlled excess emissions within the required repair deadline; and (4) conduct follow-up inspections to ensure repairs adequately controlled component leaks long-term. Refineries are required to provide quarterly inspection records to the Air District detailing all inspections, repairs, and reinspections.

44. Phillips 66 has failed, and continues to fail, to comply with Rules 1173 and 1176 VOC control measures at its Wilmington and Carson refineries. This noncompliance has contributed to ozone formation in the region; exposed residents to hazardous VOCs; and harmed or threatened the health of East Yard's members and other surrounding communities near these refineries.

## FIRST CLAIM FOR RELIEF

### Failure to Perform and/or Report Proper Component Repairs

(*Violation of Rule 1173; Title V Permit Requirements*)

45. East Yard re-alleges and incorporates the allegations set forth in Paragraphs 1 through 44.

46. Rule 1173 requires refineries to "repair, replace, or remove a leaking component as soon as practicable but no later than the time period specified" under the applicable repair period. Rule 1173(g)(1).

47. These time periods range from 1 calendar day for any component leak over 25,000 parts per million (ppm) to 7 calendar days for components in light liquid/gas/vapor service leaking above 500 ppm. Rule 1173(g)(1).

48. Rule 1173 requires refineries to submit quarterly inspection reports "no later than 30 days after the end of each calendar quarter" containing all "repairs" for that period. Rule 1173(i)(1).

49. Phillips 66 has failed to perform and/or report timely component repairs, including replacements or removals, at the Wilmington and Carson refineries since 2014. Additionally, Phillips 66 has failed to perform and/or report necessary component repairs, including replacements or removals, at least 646 times at the Wilmington and Carson refineries since 2014.

50. Without an order from this Court restraining and penalizing Phillips 66, these violations will continue.

## SECOND CLAIM FOR RELIEF

**Failure to Confirm and/or Report Adequacy of Component Repairs**

(*Violation of Rule 1173; Title V Permit Requirements*)

51. East Yard re-alleges and incorporates the allegations set forth in Paragraphs 1 through 50.

52. Rule 1173 sets leak limits for various component categories, including a 500 ppm limit for components in light liquid/gas/vapor service, 200 ppm limit for atmospheric pressure relief devices, and 100 ppm limit for components in heavy liquid service. Rule 1173(g)(1).

53. Refineries must repair, including replace or remove, components leaking above the applicable limit within time periods set under Rule 1173. Rule 1173(g)(1). These repair time periods range from 1 calendar day for any leaks

above 25,000 ppm to 7 calendar days for components in light liquid/gas/vapor service leaking above 500 ppm. Rule 1173(g)(1).

54. After conducting component repairs, refineries must take leak-rate measurements to prove the corrective action reduced the leak below the applicable threshold within the required repair time period. These measurements are generally taken contemporaneous to a repair or immediately thereafter. Without this measurement, refineries cannot determine whether the corrective action actually constitutes a repair.

55. Phillips 66 has failed to take and/or report leak-rate measurements after conducting repairs at least 710 times since 2014 at the Wilmington and Carson refineries.

56. Without an order from this Court restraining and penalizing Phillips 66, these violations will continue.

## THIRD CLAIM FOR RELIEF

### Failure to Perform and/or Report Component Reinspections
(*Violation of Rule 1173; Title V Permit Requirements*)

57. East Yard re-alleges and incorporates the allegations set forth in Paragraphs 1 through 56.

58. Rule 1173 requires refineries to reinspect "all repaired or replaced components within 30 days of the repair or replacement." Rule 1173(f)(1)(F). These reinspections ensure repaired or replaced components are in compliance with Rule 1173, and are separate from the post-leak measurements. Non-compliant components identified by reinspections must undergo another repair or replacement.

59. Rule 1173 requires refineries to submit quarterly inspection reports "no later than 30 days after the end of each calendar quarter" containing all "reinspections" for that period. Rule 1173(i)(1).

60. Phillips 66 has failed to conduct and/or report reinspections within 30 days after component repairs or replacements at least 9,330 times since 2014 at the Wilmington and Carson refineries.

61. Without an order from this Court restraining and penalizing Phillips 66, these violations will continue.

## FOURTH CLAIM FOR RELIEF

### Failure to Conduct, Maintain, and/or Report Quarterly Inspections
(*Violation of Rule 1173; Title V Permit Requirements*)

62. East Yard re-alleges and incorporates the allegations set forth in Paragraphs 1 through 61.

63. Rule 1173 requires refineries to submit quarterly inspection reports "no later than 30 days after the end of each calendar quarter" to the Air District. Rule 1173(i)(1). These quarterly inspection reports must include "all leaks, repairs, and reinspections" for each period. Rule 1173(i)(1). Refineries are required to maintain these inspection reports for at least 5 years. Rule 1173(i)(2).

64. Based on information and belief, Phillips 66 has repeatedly failed to submit and maintain quarterly inspection reports, and/or perform the required quarterly inspections for the Wilmington and Carson refineries.

65. Without an order from this Court restraining and penalizing Phillips 66, these violations will continue.

## FIFTH CLAIM FOR RELIEF

### Failure to Comply with Component Leak Standards
(*Violation of Rule 1173; Title V Permit Requirements*)

66. East Yard re-alleges and incorporates the allegations set forth in Paragraphs 1 through 65.

67. Rule 1173 establishes leak standards limiting the number of leaking components and VOC releases from various component categories.

68. Refineries are in violation of these leak standards if an Air District inspection detects any of the following:

    a. "light liquid leak of more than three drops per minute";

    b. "leak greater than 50,000 ppm from a component in light liquid/gas/vapor service";

    c. "leak greater than 500 ppm from a component in heavy liquid service";

    d. "leak within any continuous 24-hour period and numbering in excess of the Leak Thresholds" applicable to that component category; and

    e. "open-ended lines and valves located at the end of lines that are not sealed with a blind flange, plug, cap, or a second closed valve at all times" with some exceptions. Rule 1173(d)(1)(A)-(E).

69. Phillips 66 has repeatedly failed to comply with leak standards since 2015 at the Wilmington and Carson refineries.

70. Without an order from this Court restraining and penalizing Phillips 66, these violations will continue.

## SIXTH CLAIM FOR RELIEF

### Failure to Identify Components Subject to LDAR Requirements

(*Violation of Rule 1173; Title V Permit Requirements*)

71. East Yard re-alleges and incorporates the allegations set forth in Paragraphs 1 through 70.

72. Under Rule 1173, refineries are required to identify and tag all components subject to LDAR program inspections. In practice, refineries tag and log components into an LDAR database to ensure regular leak inspections and repairs.

73. Refineries must "identify clearly and visibly all major components in light liquid/gas/vapor service and pumps in heavy liquid service for inspection, repair, replacement, and recordkeeping purposes." Rule 1173(e)(1).

74. Moreover, refineries must "identify all major components in heavy liquid service" and "minor components . . . for inspection, repair, replacement, and recordkeeping purposes." Rule 1173(e)(2).

75. Phillips 66 has failed to identify all components subject to Rule 1173 inspections, including 637 components since 2014 at the Wilmington and Carson refineries.

76. Without an order from this Court restraining and penalizing Phillips 66, these violations will continue.

## SEVENTH CLAIM FOR RELIEF

### Failure to Record and/or Report Time of Inspections

(*Violation of Rule 1173; Title V Permit Requirements*)

77. East Yard re-alleges and incorporates the allegations set forth in Paragraphs 1 through 76.

78. Rule 1173 requires refineries to use a "portable instrument" or analyzer to measure component VOC leak concentrations, in accordance with Method 21. 40 C.F.R. pt. 60, app. A-7, Meth. 21, § 2.1; Rule 1173(c)(12), (j).

79. Refineries must provide instruments with sufficient time to respond with VOC leak measurements. This response time "shall be equal to or less than 30 seconds." 40 C.F.R. pt. 60, app. A-7, Meth. 21, § 8.1.3.2.

80. To ensure compliance with Method 21, Rule 1173 directs refineries to "include in all records of operator inspection and repair, at a minimum," the "time of inspection." Rule 1173(i)(2). Refineries are required to submit quarterly records of "all leaks, repairs and reinspections," including time of inspections, to the Air District. Rule 1173(i)(1).

81. Recording and reporting the time of each inspection ensures monitoring personnel are providing the portable analyzers with sufficient time to measure VOC concentrations, as required under Method 21. Improper Method 21 monitoring may fail to detect VOC leaks accurately, including hazardous VOCs.

82. Phillips 66 has failed to record and/or report time of inspections at least 12,374 times since 2014 at the Wilmington and Carson refineries. By not recording and/or reporting time of inspections, Phillips 66 has failed to demonstrate compliance with the applicable test method under Rule 1173.

83. Without an order from this Court restraining and penalizing Phillips 66, these violations will continue.

## EIGHTH CLAIM FOR RELIEF

**Failure to Confirm and/or Record Adequacy of Component Repairs**

(*Violation of Rule 1176; Title V Permit Requirements*)

84. East Yard re-alleges and incorporates the allegations set forth in Paragraphs 1 through 83.

85. Rule 1176 requires regular inspections of wastewater systems and related components to ensure VOC emissions are not "greater than 500 ppm above background levels" at refineries. Rule 1176(c)(10), (e)(1).

86. Refineries are required to repair any wastewater components with excess emissions "within three calendar days of detection." Rule 1176(c)(10), (f)(3).

87. After conducting component repairs, refineries must take measurements to prove the corrective action reduced the leak rate below the applicable threshold within the required repair time period. Rule 1176(f)(3). These measurements are generally taken contemporaneous to a repair or immediately thereafter. Without this measurement, refineries cannot determine whether the corrective action actually constitutes a repair.

88. Rule 1176 requires refineries to prepare and maintain an "inspection record" that includes all "source tests" (or leak measurements) and "repairs." Rule 1176(g)(1)(C)(i). Phillips 66 routinely submits these inspection records to the Air District.

89. Phillips 66 has failed to conduct and/or record leak measurements after conducting repairs at least 324 times since 2014 at the Wilmington refinery.

90. Without an order from this Court restraining and penalizing Phillips 66, these violations will continue.

## NINTH CLAIM FOR RELIEF

### Failure to Perform and/or Record Component Reinspections

(*Violation of Rule 1176; Title V Permit Requirements*)

91. East Yard re-alleges and incorporates the allegations set forth in Paragraphs 1 through 90.

92. Under Rule 1176, all repaired components must be reinspected within "24 hours to 48 hours" by refineries. Rule 1176(f)(3).

93. Similar to Rule 1173, these follow-up inspections "ensure that the repaired or rectified component is in compliance with this rule." Rule 1176(f)(3). Non-compliant components identified by reinspections must undergo another repair.

94. Rule 1176 requires refineries to prepare and maintain an "inspection record" that includes all "reinspections." Rule 1176(g)(1)(C)(i). Phillips 66 routinely submits these inspection records to the Air District.

95. Phillips 66 has failed to conduct and/or record reinspections within 24 hours to 48 hours after repairs at least 1,301 times since 2014 at the Wilmington and Carson refineries.

96. Without an order from this Court restraining and penalizing Phillips 66, these violations will continue.

## TENTH CLAIM FOR RELIEF

### Failure to Monitor Wastewater System Leaks Accurately

(*Violation of Rule 1176; Title V Permit Requirements*)

97. East Yard re-alleges and incorporates the allegations set forth in Paragraphs 1 through 96.

98. Under Rule 1176, refineries must identify and repair wastewater system components with "excess emissions" of VOCs. Rule 1176(f)(3). Components leaking VOCs "greater than 500 ppm above background levels" are releasing "excess emissions" and require repair. Rule 1176(c)(10), (e)(1).

99. Rule 1176 requires refineries to determine "excess emissions" using Method 21 to measure VOC component leaks above background levels, which is the "ambient concentration of VOC in the air." Rule 1176(c)(3), (10).

100. Under Method 21, refineries use a "portable instrument" or analyzer to measure component VOC leak concentrations. 40 C.F.R. pt. 60, app. A-7, Meth. 21, § 2.1. Refineries must provide instruments with sufficient time to respond with VOC leak measurements. This response time "shall be equal to or less than 30 seconds." 40 C.F.R. pt. 60, app. A-7, Meth. 21, § 8.1.3.2.

101. Phillips 66 has failed to comply with Method 21 at the Wilmington and Carson refineries, including but not limited to not providing instruments with sufficient time to respond. Phillips 66's improper Method 21 monitoring has failed to detect VOC leaks accurately, including hazardous VOCs.

102. Without an order from this Court restraining and penalizing Phillips 66, these violations will continue.

### ELEVENTH CLAIM FOR RELIEF

**Failure to Maintain, Conduct and/or Report Quarterly Inspection Reports**

(*Violation of Rule 1176; Title V Permit Requirements*)

103. East Yard re-alleges and incorporates the allegations set forth in Paragraphs 1 through 102.

104. Rule 1176 requires refineries to submit "a quarterly report" to the Air District "in a format approved by the Executive Officer, within 30 calendar days after the end of each quarter." Rule 1176(g)(2)(B).

105. Based on information and belief, Phillips 66 has repeatedly failed to submit and maintain quarterly inspection reports, and/or perform the required quarterly inspections for the Wilmington and Carson refineries.

106. Without an order from this Court restraining and penalizing Phillips 66, these violations will continue.

## TWELFTH CLAIM FOR RELIEF

### Failure to Record and/or Maintain Inspector Information

### (*Violation of Rule 1176; Title V Permit Requirements*)

107. East Yard re-alleges and incorporates the allegations set forth in Paragraphs 1 through 106.

108. Rule 1176 requires refineries to record the "name and signature of the certified inspector(s)," including "source tests, repairs, replacements, and reinspection records," conducting wastewater system inspections. Rule 1176(g)(1)(C)(i), (iii).

109. Refineries are required to prepare and maintain an "inspection record" that includes the "name and signature of the certified inspector(s)." Rule 1176(1)(C)(iii). Phillips 66 routinely submits these inspection records to the Air District.

110. Phillips 66 has failed to record and/or maintain inspector information in at least 1,591 times since 2014 at the Wilmington and Carson refineries.

111. The inspector information is important for two central reasons. First, it ensures that monitoring personnel is accountable for inaccurate or misleading information in these reports. Second, it helps refineries and regulators identify monitoring personnel that require additional training on proper leak detection and repair procedures. Such accountability and training are critical to identify and address component fugitive emissions.

112. Without an order from this Court restraining and penalizing Phillips 66, these violations will continue.

## PRAYER FOR RELIEF

WHEREFORE, East Yard respectfully requests that this Court:

I. Enjoin Defendant preliminarily and permanently from operating the Phillips 66 Wilmington and Carson refineries, except in accordance with the requirements under Rules 1173 and 1176;

II. Order Defendant to take appropriate action, including beneficial mitigation projects to remedy, mitigate, and offset the harm to the public and the environment caused by Defendant's violation of the Clean Air Act;

III. Assess civil penalties against Defendant per day, for each violation, as authorized by the Clean Air Act, 42 U.S.C. § 7604(a) and based on 42 U.S.C. § 7413(e) and 40 C.F.R. § 19.4;

IV. Award East Yard its costs and attorneys' fees in this action; and

V. Grant other relief as the Court deems just and proper.

Respectfully submitted,

DATED: February 5, 2021

/s/ Oscar Espino-Padron
OSCAR ESPINO-PADRON (CA Bar No. 290603)
oespino-padron@earthjustice.org
ANGELA JOHNSON MESZAROS (CA Bar No. 174130)
BYRON CHAN (CA Bar No. 306043)
EARTHJUSTICE
ameszaros@earthjustice.org
oespino-padron@earthjustice.org
bchan@earthjustice.org
707 Wilshire Boulevard, Ste. 4300
Los Angeles, CA 90017
Tel: (213) 766-1070
F: (213) 403-4822

*Counsel for Plaintiff East Yard Communities for Environmental Justice*